UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05CV-64-R

C & D SPECIAL PRODUCTS, INC.
                                                                                            PLAINTIFF
v.

BLACKPOWDER SHOOTING SPORTS, INC.,
                                                                                            DEFENDANT

## MEMORANDUM OPINION

Defendant Blackpowder Shooting Sports, Inc. ("Blackpowder"), has moved to dismiss the claims of Plaintiff C & D Special Products, Inc. ("C & D") for lack of jurisdiction (Dkt. # 15). C & D responded (Dkt. # 17), Blackpowder replied (Dkt. # 22), and this matter is now ripe for decision. For the reasons given below, Defendant's motion to dismiss is **DENIED in part**.

## BACKGROUND

C & D brought the instant suit seeking a declaratory judgment of non-infringement of a patent, U.S. Patent No. 6,763,765, held by Blackpowder, after it received a "cease-and-desist" letter from Blackpowder on March 11, 2005. Blackpowder subsequently filed the current motion to dismiss under Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, asserting that C & D's complaint fails to allege a case or controversy which would give the Court jurisdiction to grant a declaratory judgment. In the alternative, Blackpowder argues that the Court should exercise the discretion granted it by the Declaratory Judgment Act (28 U.S.C. § 2201) *not* to adjudicate the rights of the parties in this action. Finally, Blackpowder argues that personal jurisdiction is lacking because its cease and desist letter is insufficient to constitute the minimum contacts required for diversity jurisdiction.

1

## DISCUSSION

**Subject-Matter Jurisdiction**

In response to Blackpowder's argument that the cease-and-desist letter is insufficient to create a case or controversy giving rise to subject-matter jurisdiction, C & D argues that Federal Circuit law dictates that the facts presented here *do* satisfy the case or controversy requirement. As an initial matter, the Court notes that a case or controversy must exist as of the date of the filing of the action seeking declaratory judgment. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388 (Fed. Cir. 1984). The test for determining whether, in the patent context, a case or controversy exists is two-pronged. It requires "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993) (citing *Jervis*, 742 F.2d at 1398-99). The *BP Chemicals* court noted that "[t]he purpose of the two-part test is to determine whether the need for judicial attention is real and immediate, or is prospective and uncertain of occurrence." *Id.* (internal citation omitted). The parties do not appear to dispute that the second prong is satisfied here; rather, they dispute the "reasonable apprehension" prong of the test.

Blackpowder argues that the cease-and-desist letter was legally insufficient to create a reasonable apprehension of an infringement suit. C & D responds that the letter constituted a "direct allegation" of infringement by C & D through its then-current sales activity, which it argues is sufficient as a matter of law to create an actual controversy. Federal Circuit law counsels that this prong of the test "looks to defendant's conduct...[which] must be such as to

indicate defendant's intent to enforce its patent. If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy..." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). The *Arrowhead* court went on to explain that "[w]hen the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Id.* The *Arrowhead* court set forth examples at the two extremes of such circumstances: "[i]f the circumstances warrant, a reasonable apprehension may be found in the absence of *any* communication from defendant to plaintiff...[i]f, on the other hand, defendant has done nothing but obtain a patent, there can be no basis for the required apprehension..." *Id.* (emphasis in original; internal citations omitted).

The instant case fits neither of these situations, since there was a communication from Defendant to Plaintiff with respect to the patent in question. C & D attached the cease-and-desist letter to its complaint. The letter was from Blackpowder's patent attorney, Ken J. Pedersen, and the subject of the letter included, in all capital letters, the words "Notification and Demand." The text of the letter is as follows:

> We represent Blackpowder Shooting Sports, Inc. for patent matters. Our client is the exclusive licensee of U.S. Patent No. 6,763,765 (copy enclosed for your reference). We have become aware of your subject Saber Tooth™ bullets. We think these bullets infringe at least Claim 1 of the subject '765 patent. Therefore, this letter is to notify you of this infringement, and to demand that you take immediate steps to terminate the manufacture, use and/or sale of your Saber Tooth™ bullets in the U.S.A. I will contact you 20 days after your receipt of this letter to confirm your termination steps. If you have any questions, please have your patent attorney contact me immediately.

(Exhibit B to Complaint, Dkt. # 1). The evidence indicates that this letter constitutes the sum total of the communication between the parties on this subject. Plaintiff, however, introduced evidence in the form of affidavits that (a) Blackpowder had told at least one of C&D's customers

that it intended to sue C & D and (b) the company that owned Blackpowder, which also owned a magazine in which C&D advertised, initially attempted to prevent advertisement of the allegedly infringing bullets in the magazine and later acquiesced in the advertisement "since [C & D] was going to have to stop production [of the bullets] in the near future."

Blackpowder argues that neither the cease-and-desist letter in and of itself nor the totality of the circumstances gave rise to a reasonable apprehension of suit on the part of C & D. As to the letter itself, Blackpowder rests its argument on its assertion that the letter "did not contain a threat of suit, but instead invited a non-judicial response." (Memorandum in Support of Motion to Dismiss, Attachment # 1 to Dkt. # 15). As support for this argument, it cites *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823 (E.D. Va. 2001) and *Fresenius USA, Inc. v. Transonic Systems, Inc.*, 207 F.Supp.2d 1009 (N.D. Cal. 2001), a trademark and a patent case, respectively, in which courts construed communications from defendants as letters that "invited negotiation" and therefore did not in and of themselves create a controversy giving rise to jurisdiction.

The letter from Mr. Pedersen does not contain an explicit threat of litigation. Neither, however, does it contain language such as that cited by the *Fresenius* court explicitly contemplating non-judicial action: "[t]he letter offered to 'resolve all the infringement issues discussed above quickly and amicably' and to 'discuss possible resolutions' of the dispute." 207 F.Supp.2d 1012. The *Dunn* court, applying a "totality of the circumstances" test, found that "the record [fell] short of establishing an objectively reasonable apprehension of imminent litigation. Simply put, one cease and desist letter does not a case or controversy make where, as here, that letter invites negotiation, but does not explicitly threaten litigation, and was defendant's sole act

4

directed at plaintiff." 133 F.Supp.2d at 827. In *Dunn*, the letter included, in addition to cease and desist demands, the following language: "Our client considers protection of its intellectual property to be a critical part of its business. It has already successfully persuaded the owners of the marks THUNDERCLOUD and LAUNCHCLOUD to change their names. We hope you will amicably agree to do the same." *Id.* at 826. No such language contemplating an "amicable" resolution exists in Mr. Pedersen's letter to C & D. The Court can see no way to construe the letter as "contemplating negotiation" other than in the negative; i.e., that it *does not* explicitly threaten a law suit. Blackpowder has cited no law indicating that such a construction (that a letter not containing a threat but also not containing specific language inviting negotiation should be read as one "contemplating negotiation") is compelled or even reasonable. Therefore, the Court finds *Dunn* and *Fresenius* of little help in its construction of Mr. Pedersen's letter.

C & D cites *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, in support of its assertion that the cease-and-desist letter is sufficient to create a controversy. 846 F.2d 731 (Fed. Cir. 1988). In that case, the court described the concerns that led to the passing of the Declaratory Judgment Act (28 U.S.C. § 2201) in colorful language:

> In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual "controversy" required by the Act.

*Id.* at 734-35 (emphasis in original; internal citations omitted). The *Arrowhead* court went on to

say that in order to give rise to such a conflict, "defendant's conduct ... must be such as to indicate defendant's intent to enforce its patent. If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Id.* at 736. If this is not the case, then the Court must look to the totality of the circumstances to determine whether there was a reasonable apprehension of suit.

  C & D argues that Mr. Pedersen's letter constitutes the type of "charge" contemplated by the *Arrowhead* court. Blackpowder, on the other hand, argues that the term "charged" applies only to the actual filing of an infringement suit. The Federal Circuit, however, sometimes appears to use the term to mean something closer to "accuse." *See, e.g., Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992)  In that case, the Federal Circuit said that: "[a]ccording to Shell, Amoco actually made an express charge of infringement against Shell in its May 4, 1990 letter, which stated that Shell's operations 'fall [] within' the claims of the '679 patent." *Id.* at 888. Ultimately, the *Shell Oil* court held that the statement in the letter did not constitute an express charge of infringement; however, it did so because it believed that the statement was merely an assertion of a negotiating position in the ongoing license negotiations between the two parties, *not* because Amoco did not file suit. By implication, then, the term "charged" does not necessarily have the meaning advanced by Blackpowder. It appears that an accusatory statement, such as the one contained in Mr. Pedersen's letter ("We think these bullets infringe at least Claim 1 of the subject '765 patent. Therefore, this letter is to notify you of this infringement, and to demand that you take immediate steps to terminate the manufacture, use and/or sale of your Saber Tooth™ bullets in the U.S.A."), can constitute a "charge" as discussed

in *Arrowhead*.

Even if, however, the letter does not constitute such a charge, the totality of the circumstances would create a case or controversy sufficient to give rise to subject matter jurisdiction for constitutional purposes. In this case, the totality of the circumstances includes statements made by Blackpowder to C & D's customers and others in its business to the effect that Blackpowder was planning to file an infringement suit against C & D, and that C & D would not be manufacturing the Saber Tooth bullets in the near future. Blackpowder argues that the Court should discount the affidavits used to demonstrate these occurrences because, it argues, they are irrelevant and constitute hearsay. As to relevance, in light of the purposes elucidated by the *Arrowhead* court for granting declaratory judgments in patent cases (i.e., putting a stop to the use of idle threats to pollute the business environment), such statements are clearly relevant. As to the issue of hearsay, even if the Court were to disregard the affidavits on this basis, C & D's Complaint contains the specific statement that "[Blackpowder] has also told others that the Saber Tooth bullets infringe claims of the '765 Patent and that [Blackpowder] will bring suit against C & D." (Complaint, Dkt. # 1, at ¶ 10). Although this statement lacks the specificity provided by the affidavits, for purposes of the Motion to Dismiss it constitutes conduct on the part of Blackpowder that is part of the totality of the circumstances and gives rise to a reasonable apprehension of imminent suit.

Therefore, the Court finds that it has jurisdiction under federal law to adjudicate the rights of the parties.

**Discretion Under the Declaratory Judgment Act**

The Declaratory Judgment Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L.Ed.2d 214 (1995). "The use of discretion is not plenary, however, for '[t]here must be well-founded reasons for declining to entertain a declaratory judgment action.'" *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) (quoting *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed.Cir.2004)). Blackpowder rests its argument that the Court should exercise its discretion *not* to grant a declaratory judgment (or, indeed, even to allow the case to proceed beyond this Motion to Dismiss) on the fact that C & D filed this action prior to the "deadline" set forth in Mr. Pedersen's letter. It argues that "[t]o allow this suit to go forward would discourage patentees from contacting potential infringers for fear of being sued before any possible negotiations took place, thus burdening patentees and the courts with unnecessary declaratory judgment suits." (Memorandum in Support of Motion to Dismiss, Attachment # 1 to Dkt. # 15, at p. 12). This argument could be persuasive if the letter itself had in any way provided an indication that Blackpowder was contemplating negotiation of the conflict rather than an infringement suit. However, the letter contained no such indication. A patent holder cannot reasonably be expected to assure the potential infringer that it *will not* bring an infringement suit. However, if the holder makes no mention of negotiation to the potential infringer and *does* make statements threatening suit (even if not directly to the potential infringer), the patent holder's (apparently secret) desire to negotiate does not constitute a "well-founded reason" for declining to exercise jurisdiction. Therefore, the Court will exercise the discretion provided to it in 28 U.S.C. § 2201.

**Personal Jurisdiction**

8

Blackpowder argues that this court lacks personal jurisdiction over it because it does not have sufficient contacts with the Commonwealth of Kentucky to subject it to jurisdiction to courts here. It offers to "show at an evidentiary hearing that it has not 'transacted business in this District' as alleged in paragraph 4 of the complaint, nor created sufficient contacts with the state of Kentucky to be subject to personal jurisdiction..." (Memorandum in Support of Motion to Dismiss, Dkt. # 15, at 12). No further mention of the issue was made in C & D's Response nor in Blackpowder's Reply. Therefore, the Court will withhold ruling on the issue of personal jurisdiction.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED in part**. An appropriate order shall issue.